SHIRLEY S. ABRAHAMSON, C.J.
¶ 66. (dissenting). I would affirm the decision of the court of appeals holding that the officer's conduct in the instant case constituted a seizure of the defendant within the meaning of the federal and state constitutions.
¶ 67. No one disputes that the legal standard to be applied to determine whether a seizure occurred in the instant case is as follows: "[A] seizure occurs if 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' "[1]
¶ 68. The dispute is about the application of the legal standard to the totality of the circumstances of the instant case.[2]
¶ 69. Here are the circumstances: It was late at night; the parking lot was empty; Deputy Small was in *379 full uniform with his pistol fully visible; the deputy parked his squad car with headlights on right behind the defendant's vehicle; the location of the defendant's vehicle in the parking lot was not conducive to simply driving away; Deputy Small rapped loudly on the window; Deputy Small signaled the defendant to roll down the window.
¶ 70. Courts across the country have divided when confronted with facts substantially similar to the ones in the instant case.[3] Why? Because courts engage in a fiction in determining whether the mythical reasonable person in the position of the defendant would have believed that he or she was not free to leave.[4]
¶ 71. Studies demonstrate that the reasonable person "free to leave" standard applied in judicial decisions does not generally reflect what real, everyday people think and how they act when approached by law enforcement officers.[5] In short, the world of legal *380 decisions does not reflect the real world. As Professor LaFave has written, the United States Supreme Court finds "a perceived freedom [to leave] in circumstances when only the most thick-skinned of suspects would think such a choice was open to them."[6]
¶ 72. When I look to the totality of the circumstances in the instant case, I conclude that, under the circumstances, a reasonable person would not have felt free to leave. A reasonable person would have had three options: (1) to drive away; (2) to stay put with the window closed; or (3) to comply with the officer's directions.
¶ 73. No reasonable person I can imagine would feel free to drive away under the circumstances of the present case when the officer knocked on the car window and instructed the person to roll down the car window. A reasonable person would be concerned that driving away could be viewed as violating some law that governs obstructing an officer, disobeying an officer, or fleeing.
¶ 74. No reasonable person I can imagine would feel free to simply stay put with the car window closed for substantially the same reasons that no reasonable person would have just driven off.
¶ 75. As the court of appeals wrote, "when a uniformed officer approaches a vehicle at night and directs the driver to roll down his or her window, a reasonable driver would not feel free to ignore the officer." County of Grant v. Vogt, No. 2012AP1812, unpublished slip op. ¶ 13 (Wis. Ct. App. March 14, 2013).
¶ 76. Before I conclude, I address the community caretaker function that the concurrence addresses.
*381 ¶ 77. Exceptions to the warrant requirement are to be carefully delineated. "The State bears the burden of proving that the officer's conduct fell within the scope of a reasonable community caretaker function." State v. Kramer, 2009 WI 14, ¶ 17, 315 Wis. 2d 414, 759 N.W.2d 598 (citation omitted). The State in the instant case never met or attempted to meet this burden.
¶ 78. The concurring opinion concludes, "Under the totality of the circumstances, it was objectively reasonable for Officer Small to conclude that the occupants of the vehicle might be in need of assistance." Concurrence, ¶ 59. But neither the officer's testimony nor the State's arguments demonstrate that the officer ever came to that conclusion or that that conclusion is objectively reasonable on the basis of this record. Overall, the concurring opinion relies on a wholly speculative premise.
¶ 79. For the reasons set forth, I dissent.
¶ 80. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

 Brendlin v. California, 551 U.S. 249, 255 (2007) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).
See also majority op., ¶ 30; State v. Williams, 2002 WI 94, ¶ 23, 255 Wis. 2d 1, 646 N.W.2d 834.

 The totality of the circumstances is important. A small variation in the circumstances often determines the outcome. See Wayne R. LaFave, 4 Search & Seizure: A Treatise on the Fourth Amendment § 9.4(a), at 594-95 (5th ed. 2013):
[T]he mere approach and questioning of [persons seated in parked vehicles] does not constitute a seizure. The result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation. The officer may tap on the window and perhaps even open the door if the occupant is asleep. A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so (footnotes omitted, emphasis added).

 See several cases described in majority op., ¶¶ 33-38.

 See majority op., ¶ 31 n.14.

 See, e.g., David K. Kessler, Free To Leave: An Empirical Look at the Fourth Amendment's Seizure Standard, 99 J. Crim. L. & Criminology 51 (2009) (concluding that the average person does not feel free to leave simple interactions with police officers, based on empirical evidence from studying two scenarios in which the United States Supreme Court has held that a reasonable person would feel free to leave, on public sidewalks and on busses); Edwin J. Butterfoss, Bright Line Seizures: The Need for Clarity in Determining When Fourth Amendment Activity Begins, 79 J. Crim. L. & Criminology 437, 439-42 (1988) (describing the "free to leave" test as artificial, resulting in outcomes "which bear little relationship to the individual's actual freedom to walk away"); Janice Nadler, No Need to Shout: Bus Sweeps and the Psychology of Coercion, 2002 Sup. Ct. Rev. 153 (2002) (criticizing broadly the Court's postMendenhall jurisprudence as ignorant of human behavior with respect to authority figures, creating a set of non-seizures that *380 nonetheless relied upon the coercive force of law enforcement).

 Wayne R. LaFave, Pinguitudinous Police, Pachydermatous Prey: Whence Fourth Amendment "Seizures"?, 1991 U. Ill. L. Rev. 729, 739-40.